UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD STRAIN and DAVID GARNER, individually and on behalf of all others similarly situated,<br><br>PLAINTIFFS,<br><br>v.<br><br>SOUTHWEST AIRLINES CO.,<br><br>DEFENDANT. | Case No. 2:24-cv-8885<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiffs Richard Strain and David Garner are current baggage and cargo handlers for Defendant Southwest Airlines Co. at airports in New York State. In violation of New York and federal law, Southwest refused to pay baggage and cargo handlers, including Plaintiffs Strain and Garner, on a weekly basis. Accordingly, Plaintiffs, individually and on behalf of all others similarly situated, allege as follows:

## INTRODUCTION

1. The New York Labor Law ("NYLL") mandates that manual workers be paid on a weekly basis. NYLL § 191(1)(a). If employers violate this requirement, workers may recover liquidated damages for the withholding of their wages. *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 107 N.Y.S.3d 286 (N.Y. App. Div. 2019). An employer may not "perpetually violate § 191 simply by paying the employee, in full, after a delay beyond the one-week period set by statute." *Scott v. Whole Foods Mkt. Grp., Inc.*, No. 18-CV-0086, 2019 WL 1559424, at *4 (E.D.N.Y. Apr. 9, 2019). Allowing employers to do so is inconsistent with the NYLL's stated purpose of protecting workers who are "generally dependent upon their wages for sustenance." *Vega*, 107 N.Y.S.3d at 289.

1

2. The Fair Labor Standards Act ("FLSA") similarly requires prompt payment of wages and determines whether payment is timely according to "objective standards." *Rogers v. City of Troy*, 148 F.3d 52, 55-57 (2d Cir. 1998). Courts in the Second Circuit analyze the FLSA's prompt payment requirement and NYLL § 191 together. *Sarit v. Westside Tomato, Inc.*, No. 18-CV-11524, 2020 WL 1891983, at *4 (S.D.N.Y. Apr. 16, 2020) (collecting cases). *See also Cooke v. Frank Brunckhorst Co., LLC*, No. 23-CV-6333, 2024 WL 2263087, at *6 (E.D.N.Y. May 18, 2024) ("Courts in this Circuit have found defendants to have violated the FLSA by failing to issue prompt payment pursuant to NYLL § 191.") (collecting cases).

3. This lawsuit seeks to recover liquidated damages caused by untimely wage payments and other damages for Mr. Strain, Mr. Garner, and similarly situated ramp agents, cargo agents, and other baggage and cargo handlers who work or have worked for Southwest in New York State within the previous six years through final judgment in this matter.

## JURISDICTION AND VENUE

4. This Court has federal subject matter jurisdiction over the FLSA claims asserted in this action pursuant to 28 U.S.C. § 1331 because the action arises under a federal statute, 29 U.S.C. §§ 201, et seq., and the Court has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367 because the claims under the NYLL arise from the same transaction or occurrence as Plaintiffs' and the Class's federal claims.

5. This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy between at least one named plaintiff and Defendant exceeds the sum or value of $75,000.00.

6. In addition, this Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because this is a class action in which: (1) there are 100 or more members in Plaintiffs' proposed class; (2) the Plaintiffs and at least some

2

members of the proposed class have different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs. In particular, Plaintiffs and most class members are citizens of New York, while Southwest is a citizen of Texas.

7. The Eastern District of New York has personal jurisdiction over Defendant because many of the acts complained of occurred in this State and this District and gave rise to claims alleged in this complaint.

8. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

9. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## **THE PARTIES**

**Plaintiffs**

10. Richard Strain is a resident of New York who has worked, and currently works, for defendant Southwest as a ramp agent loading and unloading baggage and cargo onto Southwest planes in Islip, New York since June 2008.

11. At all relevant times, Mr. Strain has been an "employee" within the meaning of NYLL § 190(2) and the FLSA, 29 U.S.C. § 203(e)(1).

12. At all relevant times, Mr. Strain has been a "manual worker" within the meaning of NYLL § 190(4).

13. David Garner is a resident of New York who has worked, and currently works, for defendant Southwest as a ramp agent loading and unloading baggage and cargo onto Southwest planes in Buffalo, New York since December 2009.

14. At all relevant times, Mr. Garner has been an "employee" within the meaning of NYLL § 190(2) and the FLSA, 29 U.S.C. § 203(e)(1).

15. At all relevant times, Mr. Garner has been a "manual worker" within the meaning of NYLL § 190(4).

**Defendant**

16. Southwest is a corporation that is both incorporated and has its principal place of business in Texas.

17. Southwest does business throughout this District.

18. Southwest's annual gross volume of sales made and/or business done exceeds $500,000.

19. Southwest is an "employer" within the meaning of NYLL § 190(3) and 29 U.S.C. § 203(d).

20. At all relevant times, Southwest has employed Mr. Garner, Mr. Strain, and the class members.[1]

## FACTUAL ALLEGATIONS

21. Southwest is an airline that operates throughout New York State, including at Buffalo Niagara International Airport, Long Island MacArthur Airport, LaGuardia Airport, and Albany International Airport.

22. Southwest employs numerous workers as baggage and cargo handlers at these airports—under titles such as ramp agent and cargo agent. Southwest does not pay these workers on a weekly basis as required by the NYLL but instead pays their wages on a less frequent basis.

---

[1] Unless otherwise specified, the term "class members" as used in the Complaint refers both to the members of the FLSA collective action alleged under 29 U.S.C. § 216(b) and to the members of the class alleged under Fed. R. Civ. P. 23. The term "class members" includes Plaintiffs Strain and Garner.

23. Southwest hired Mr. Strain as a ramp agent on or about June 6, 2008. Mr. Strain works for Southwest at the Long Island MacArthur Airport in Islip, New York.

24. Southwest hired Mr. Garner as a ramp agent on or about December 2, 2009. Mr. Garner works for Southwest at the Buffalo Niagara International Airport in Buffalo, New York.

25. Plaintiffs and the class members spent or spend more than 25% of their time performing physical tasks, including lifting, loading, and unloading baggage and cargo; cleaning airplane lavatories; and assisting with snow removal.

26. Plaintiffs and the class members' duties involve loading and unloading baggage and cargo on and off of planes bound for different states.

27. Plaintiffs and the class members are current or former manual workers within the meaning of NYLL § 190(4). They depend on their wages for sustenance; and, as a result, suffer harm that is particularly acute due to Southwest's delayed payment of their earned wages, depriving them of the compensation which they rely upon to survive.

28. Defendant did not pay wages to Plaintiffs or the other class members on the requisite weekly basis. Instead, Defendant paid them twice per month in violation of NYLL § 191.

29. For example, for the month of August 2024, Defendant paid Plaintiffs Strain and Garner on August 20 for work performed between August 1 and August 15 and then on September 5 for work performed between August 16 and August 31.

30. The New York State Department of Labor has not authorized Southwest to pay its manual workers on anything other than a weekly basis.

31. Each time that Defendant failed to pay Plaintiffs and the class members their earned wages within seven days of the end of the workweek, it deprived them of the use of the money to which they are legally entitled.

5

32. As a result of Defendant's delays in paying its workers their earned wages, Plaintiffs and the class members were deprived of the time value of money and the opportunity to invest the money to which they were entitled.

33. Defendant's delays in paying workers their earned wages also harmed Plaintiffs and the class members by inhibiting their ability to support themselves and their families, including by preventing them from paying bills or making essential purchases while they waited to be paid.

34. As an example, Mr. Garner would often delay purchasing groceries or gas, and when his car needed new brakes, he had to put off the repair until his next paycheck, leaving his family reliant on one car in the interim. Mr. Strain similarly found himself having to choose between purchasing groceries and purchasing gas.

35. By retaining wages earned beyond the timeframes set by NYLL § 191, Defendant benefitted from the time value of money and the free use of such funds at the expense of Plaintiffs and class members. For example, during the interval of delayed wage payments, Defendant was free to utilize those funds to pay for business expenses and/or accrue interest on those funds in its business accounts.

36. Defendant does not have a good faith basis for failing to pay Plaintiffs' and class members' wages on a weekly basis.

37. Defendant's consistent failure to pay Plaintiffs and the class members weekly is unjustified and objectively unreasonable.

## **CLASS ACTION ALLEGATIONS UNDER FED. R. CIV. P. 23 AND THE NEW YORK LABOR LAW**

38. Plaintiffs bring this class action to recover damages under New York law on behalf of themselves and all other similarly situated current and former ramp agents, cargo agents, and other baggage and cargo handlers who were not paid their wages on a weekly basis. The New York

Class is defined as follows:

> All current and former employees of Defendant working as baggage and/or cargo handlers, including but not limited to ramp agents and cargo agents, throughout the State of New York during the time period from six years prior to the filing of the complaint until the date of judgment in this action. ("New York Class Members")

39. This action is properly brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

40. The New York Class consists of well over 40 persons and is so numerous that joinder of all members, whether required or permitted, is impracticable.

41. There exist questions of fact and law common to the New York Class which predominate over any questions affecting only individual members, including:

   a) whether Southwest violated NYLL § 191(1)(a);

   b) whether ramp agents, cargo agents, and other baggage and cargo handlers at Southwest are "manual workers" under the New York Labor Law;

   c) whether Southwest correctly compensated Plaintiffs and the New York Class Members on a timely basis; and

   d) the nature and extent of class-wide injury and the measure of damages for those injuries.

42. Plaintiffs' claims are typical of those claims which could be alleged by any member of the New York Class, and the relief that Plaintiffs seek is typical of the relief which would be sought by each member of the class in separate actions. Like all New York Class Members, Plaintiffs were subject to Defendant's practice of failing to provide payment on a prompt, weekly basis. The damages suffered by Plaintiffs and the other New York Class Members arise from the same unlawful policies, practices, and procedures.

43. Plaintiffs and the New York Class Members have all been injured in that they have been compensated in an untimely manner due to Southwest's common policies, practices, and

patterns of conduct. Southwest's corporate-wide policies and practices affected everyone in the class similarly, and Southwest has benefited from the same type of wrongful acts as to each member of the class.

44. Plaintiffs are able to fairly and adequately protect the interests of the New York Class and have no interests antagonistic to the class.

45. Plaintiffs have hired counsel who are able and experienced in class action litigation, and who will fairly and adequately protect the interests of the New York Class.

46. A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation, in which individual class members typically lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions would engender. Moreover, important public interests will be served by addressing the matter as a class action. Litigation of individual claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action will result in significant savings and efficiencies. The prosecution of separate actions by individual New York Class Members would create a risk of inconsistent and/or varying adjudications with respect to the individual class members, establishing incompatible standards of conduct for Southwest and resulting in the impairment of the New York Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, as necessary, the Court is empowered to fashion methods to efficiently manage this action as a class action.

47. In Plaintiffs' understanding, many New York Class Members likely harbor a fear of retaliation that would further support the superiority of a class action. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Likewise, both current and former employees are often fearful of bringing claims because doing so can harm their current employment, future employment, and future efforts to secure employment. A class action provides New York Class Members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

48. Additionally, Southwest has acted or refused to act on grounds that apply generally to the class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the New York Class as a whole.

## **COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA**

49. Plaintiffs also bring a FLSA claim on behalf of themselves and all other similarly situated current and former ramp agents, cargo agents, and other baggage and cargo handlers. Specifically, Plaintiffs bring the claim on behalf of FLSA Collective Action Members, defined as:

> All current and former employees of Defendant working as baggage and/or cargo handlers, including but not limited to ramp agents and cargo agents, throughout the State of New York during the time period from three years prior to the filing of the complaint until the date of judgment in this action.

50. The FLSA claim is properly maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b). Plaintiffs and the other FLSA Collective Action Members perform and have consistently performed substantially similar job duties and are subject to the same compensation policies. Plaintiffs and the other FLSA Collective Action Members are all subject to a common practice, policy, or plan under which Defendant failed to pay them promptly.

51. There are numerous FLSA Collective Action Members who receive and/or have received late payment of wages. Those similarly situated employees are known to Southwest, are

readily identifiable, and can be identified and located through Southwest's payroll and personnel records. The FLSA Collective Action Members would benefit from the issuance of court-supervised notice and an opportunity to join the present action if they choose. Given the composition and size of the FLSA collective, FLSA Collective Action Members may be informed of the pendency of this action directly via U.S. Mail, email, and otherwise.

52. At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendant has employed "employee[s]," including Plaintiffs and each of the FLSA Collective Action Members.

53. Plaintiffs consent to be party plaintiffs in this FLSA lawsuit against Defendant. Copies of their Consent to Join Forms are attached to this Complaint.

## FIRST CAUSE OF ACTION
**New York Labor Law – Failure to Pay Timely Wages**

54. Plaintiffs, on behalf of themselves and all New York Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

55. Plaintiffs and the New York Class Members were employed by Defendant in the state of New York.

56. Plaintiffs and the New York Class Members are manual workers.

57. The timely wage provision of NYLL § 191(1)(a) applies to Defendant and protects Plaintiffs and all New York Class Members.

58. Plaintiffs and New York Class Members are part "of the class for whose particular benefit [NYLL § 191(1)(a)] was enacted." *Vega*, 107 N.Y.S.3d at 289.

59. Defendant failed to pay Plaintiffs and the New York Class Members on a weekly basis as required by NYLL § 191(1)(a) and instead paid them twice per month.

60. Plaintiffs and New York Class Members suffered injuries as a result of Defendant's late-made wage payments including, but not limited to, loss of the time value of money; inability to invest and/or earn interest on the untimely paid wages; and inability to use the delayed wages to sustain themselves and their families when those wages were earned and needed.

61. Due to Defendant's willful violations of the NYLL, Plaintiffs and the New York Class Members are entitled to liquidated damages in the amount of their untimely paid wages, reasonable attorneys' fees, costs, and such other legal and equitable relief as this Court deems just and proper.

**SECOND CAUSE OF ACTION**
**Fair Labor Standards Act – Failure to Issue Prompt Payment**

62. Plaintiffs, on behalf of themselves and all FLSA Collective Action Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

63. The FLSA applies to Defendant and protects Plaintiffs and the FLSA Collective Action Members.

64. The FLSA requires that employers promptly pay their employees. *See Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998). "What constitutes timely payment must be determined by objective standards." *Id.* at 57. Weekly pay for manual workers is an objective standard for prompt payment. *Cooke v. Frank Brunckhorst Co., LLC*, --- F. Supp. 3d ---, No. 23-CV-6333, 2024 WL 2263087, at *6 (E.D.N.Y. May 18, 2024).

65. Despite the clear and objective requirement that Defendant pay Plaintiffs and FLSA Collective Action Members on a weekly basis, Defendant issued wage payments twice per month.

66. Defendant's failure to pay Plaintiffs and the FLSA Collective Action Members on a weekly basis was unjustified and objectively unreasonable.

67. Plaintiffs and the FLSA Collective Action Members suffered injuries as a result of Defendant's late wage payments including, but not limited to, the loss of the time value of money, inability to invest and/or earn interest on the untimely paid wages, and inability to use the delayed wages to sustain themselves and their families when those wages were earned and needed.

68. Due to Defendant's willful violations of the FLSA, Plaintiffs and the FLSA Collective Action Members are entitled to liquidated damages in the amount of their untimely paid wages, reasonable attorneys' fees, costs, and such other legal and equitable relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, pray for the following relief:

a. At the earliest possible time, that the FLSA action be designated as a collective action and notice of the action be issued to apprise all FLSA Collective Members of the pendency of this action and permit them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b).

b. That the New York Labor Law action be certified as a class action pursuant to Federal Rule of Civil Procedure 23;

c. Designation of Plaintiffs as representatives of the New York Class and counsel of record as class counsel;

d. Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the NYLL and the FLSA;

e. An award in excess of $100,000,000 for liquidated damages pursuant to the NYLL and the FLSA;

    f. Appropriate equitable and injunctive relief to remedy Southwest's violations, including but not limited to an order enjoining Southwest from continuing its unlawful practices;

    g. Attorneys' fees and litigation costs incurred in this action, including any expert fees;

    h. Pre-judgment and post-judgment interest; and

    i. Such other legal and equitable relief as this Court deems necessary, just, and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: December 29, 2024

Respectfully submitted,

    */s/ Michael D. Palmer*
Michael D. Palmer
Andrew Melzer
**SANFORD HEISLER SHARP MCKNIGHT, LLP**
17 State Street, 37th Floor
New York, New York 10004
Telephone: (646) 402-5650
mpalmer@sanfordheisler.com
amelzer@sanfordheisler.com

13