**GT GreenbergTraurig**

Jason Burns
Tel 212.801.9294
Fax 212.801.6400
Jason.Burns@gtlaw.com

March 10, 2025

The Honorable Sanket J. Bulsara
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Garner and Strain v. Southwest Airlines Co.*, Case No. 2:24-cv-08885-SJB-ST

Dear Judge Bulsara:

Our firm represents Defendant Southwest Airlines Co. ("Southwest") in this action. We write pursuant to Rule VI(G)(1) of Your Honor's Individual Motion Practices and Rules to request a pre-motion conference concerning Southwest's anticipated motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Plaintiffs, two Ramp Agents employed by Southwest, allege two causes of action, one under the New York Labor Law ("NYLL") and the other under the Fair Labor Standards Act ("FLSA"). Both claims hinge on Plaintiffs' argument that, despite agreeing to bimonthly pay in their collective bargaining agreement ("CBA"), Plaintiffs are "manual workers" who should be paid weekly under NYLL § 191(1)(a). *See* ECF No. 1. Plaintiffs challenge only the timing of their pay—they do *not* allege that they are owed any unpaid wages.

Plaintiffs' claims should be dismissed. Plaintiffs are highly trained employees. Extensive federal safety regulations govern their work in restricted areas at airports in New York. They are not the type of low-skilled laborers who qualify as "manual workers." But the Court need not reach that issue to dismiss Plaintiffs' claims. Even if Plaintiffs were manual workers (which Southwest disputes), they waived any right to weekly pay by working for years under the CBA. To the extent the Court has any doubt about Plaintiffs' waiver, it still should dismiss their claims. The Railway Labor Act ("RLA") preempts Plaintiffs' NYLL claim because the Court cannot decide it without interpreting the CBA. Plaintiffs' derivative FLSA claim fails for the straightforward reason that the FLSA does not mandate weekly pay.

The Court can dismiss Plaintiffs' Complaint without deciding whether Section 191 includes a private right of action. For the reasons explained in *Grant v. Global Aircraft Dispatch, Inc.*, 223

Greenberg Traurig, LLP | Attorneys at Law

Albany. Amsterdam. Atlanta. Austin. Berlin¬. Boston. Charlotte. Chicago. Dallas. Delaware. Denver. Fort Lauderdale. Houston. Kingdom of Saudi Arabia≈. Las Vegas. London∗. Long Island. Los Angeles. Mexico City+. Miami. Milan≈. Minneapolis. Munich¬. New Jersey. New York. Northern Virginia. Orange County. Orlando. Philadelphia. Phoenix. Portland. Sacramento. Salt Lake City. San Diego. San Francisco. São Paulo+. Seoul≈. Shanghai. Silicon Valley. Singapore⁺. Tallahassee. Tampa. Tel Aviv∗. Tokyo¬. United Arab Emirates∗. Warsaw¬. Washington, D.C. West Palm Beach. Westchester County.

Operates as: ¬Greenberg Traurig Germany, LLP; ≈Greenberg Traurig Khalid Al-Thebity Law Firm; ∗A separate UK registered legal entity; +Greenberg Traurig, S.C.; » Greenberg Traurig Studio Legale Associato; ›Greenberg Traurig Brazil Consultores em Direito Estrangeiro – Direito Estadunidense; ∞Greenberg Traurig LLP Foreign Legal Consultant Office; ⁺Greenberg Traurig Singapore LLP; ^A branch of Greenberg Traurig, P.A., Florida, USA; ≠GT Tokyo Horitsu Jimusho and Greenberg Traurig Gaikokuhojimubegoshi Jimusho; ‹Greenberg Traurig Limited; ~Greenberg Traurig Nowakowska-Zimoch Wysokiński sp.k..

www.gtlaw.com

Hon. Sanket J. Bulsara
March 10, 2025
Page 2

A.D.3d 712 (2d Dep't 2024), it does not. But if the Court declines to dismiss Plaintiffs' Section 191 claim on waiver or preemption grounds, it should follow other courts by staying this action until the Second Department rules on the plaintiff's request in *Grant* for leave to appeal to the New York Court of Appeals.

**A. Relevant Background**

Richard Strain and David Garner ("Plaintiffs") commenced employment at Southwest in 2008 and 2009, respectively. At all relevant times, a CBA between Southwest and Plaintiffs' union, the Transport Workers Union of America, AFL-CIO Local 555, has governed Plaintiffs' employment. Under the CBA, Plaintiffs and other Ramp Agents agreed to be paid bimonthly. Contrary to that agreement, Plaintiffs purport to bring this action on behalf of "all current and former employees of Defendant working as baggage and/or cargo handlers, including but not limited to ramp agents and cargo agents, throughout the State of New York."

**B. Plaintiffs Waived Their Claims.**

By agreeing to the CBA, Plaintiffs waived any right to weekly pay. "[W]hen considering whether a voluntary waiver of rights has occurred, the focus is 'upon the existence of a bona fide agreement by which the employee received a desired benefit in return for the waiver, the complete absence of duress, coercion or bad faith[,] and the open and knowing nature of the waiver's execution." *Nabors v. Town of Somers*, 72 A.D.3d 769, 772-73 (2d Dep't 2010) (quoting *Am. Broad. Cos. v. Roberts*, 61 N.Y.2d 244, 249-50 (1984)). "It is well settled under New York law that statutory benefits or protections . . . may be waived by union members under collective bargaining agreements." *Welch v. Carson Prods. Grp., Ltd.*, 791 F.2d 13, 17 (2d Cir. 1986).[1]

The CBA is a bona fide agreement under which Plaintiffs received benefits—including double- and triple-time pay in certain circumstances—that far exceed the requirements of state and federal law. Plaintiffs consented to bimonthly pay through their long-standing membership in the union. *See Welch*, 791 F.2d at 16-17. Plaintiffs cannot credibly allege "even a hint of duress or coercion in the negotiations which resulted in" their waiver. *See Am. Broad. Cos.*, 61 N.Y.2d at 250. As a result, Plaintiffs have waived any right to weekly pay. And because Plaintiffs' FLSA claim turns entirely on their demand for weekly pay, Plaintiffs' waiver bars both their NYLL and FLSA claims.

**C. The RLA Preempts Plaintiffs' NYLL Claim**

Even if Plaintiffs did not waive any right to weekly pay, the RLA preempts their Section 191 claim. Therefore, the Court should dismiss it pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. The RLA preempts disputes between airlines and their employees "growing out of . . . the interpretation or application of agreements concerning rates of pay, rules, or working conditions." *Parker v. Metro. Transp. Auth.*, 97 F. Supp. 2d 437, 445 (S.D.N.Y. 2000). For this

---

[1] The Court may consider the CBA to determine Southwest's motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Germosen v. ABM Indus. Corp.*, No. 13-1978, 2014 WL 4211347, at *1 n.3 (S.D.N.Y. Aug. 26, 2014) (holding that court may consider a CBA not attached to the complaint when the "complaint is based entirely on [plaintiffs'] employment relationship with [defendant], of which the CBA is an integral part").

Hon. Sanket J. Bulsara
March 10, 2025
Page 3

very reason, the Ninth Circuit, *interpreting the same CBA governing Plaintiffs' employment*, held that the RLA preempted state wage and hour claims. *See McKinley v. Sw. Airlines Co.*, No. 15-02939, 2015 WL 2431644, at *1 (C.D. Cal. May 19, 2015), *aff'd*, 680 F. App'x 522 (9th Cir. 2017).[2]

Here, the RLA preempts Plaintiffs' NYLL claim for two principal reasons. *First*, if the Court finds that the CBA is ambiguous as to Plaintiffs' waiver, then the Court must resolve that threshold question not only by interpreting "the language and context of the CBA," but "also [by] consider[ing] the parties' bargaining history." *Cooper Union Fed'n of Coll. Tchrs., Loc. 2163, NYSUT, AFT, AFL-CIO by Gleeson v. Cooper Union for Advancement of Sci. & Art*, No. 18-05891, 2019 WL 121000, at *4-5 (S.D.N.Y. Jan. 7, 2019) (holding claims preempted after concluding that "at least one plausible interpretation of the CBA would be fatal to" plaintiff's claim). *Second*, to determine whether Plaintiffs are manual workers, the Court must assess "the overall nature of [their] work in providing assistance to the provision of [airfare services]" and whether it "outweighs any sense of the role being one of a manual worker as a reasonable person would view it." *Balderramo v. Go New York Tours Inc.*, 668 F. Supp. 3d 207, 226 (S.D.N.Y. 2023). This assessment requires the Court to interpret the CBA, which governs how, and how often, Plaintiffs perform their bargained-for job duties. For instance, the CBA states that a Ramp Agent, "[a]s qualified, operates all power and other ground equipment . . . assigned by the Company to complete its airline operations" and "[m]ay act as one of two aircraft guide agents unless a qualified agent is available at the start of the wing walking procedure of an aircraft." The Court cannot determine the meaning of these and other industry- and CBA-specific terms without wading into the CBA's meaning and intent. *See, e.g.*, *Adames v. Executive Airlines, Inc.*, 258 F.3d 7, 13-14 (1st Cir. 2001) (holding RLA preempted wage and hour claims that required court to interpret "flight time," "duty time," and terms governing plaintiff's job duties under CBA).

### D. Plaintiffs Fail to State an FLSA Claim

Plaintiffs cannot state an FLSA claim merely by pointing to the NYLL's requirements. The FLSA requires only "prompt" payment and does not impose a specific deadline for paying wages. *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 55 (2d Cir. 1998). Nor is it a "mechanism to enforce a solely state-law requirement." *Pineda v. Big City Realty Mgmt., LLC*, No. 22-5428, 2024 WL 5146068, at *6 (E.D.N.Y. Dec. 17, 2024) (dismissing Section 191 claim); *see also Hernandez v. La Cazuela de Mari Restaurant, Inc.*, 2007 WL 9719347, at *6 (E.D.N.Y. Mar. 2, 2007) ("[T]he FLSA does not incorporate state law."). Simply put, "failure to pay employees on a weekly basis cannot form the basis of a claim under the FLSA. This is especially true where . . . [P]laintiff[s] assert that [Southwest] did pay [their] wages promptly, just on a biweekly instead of weekly schedule." *See Pineda*, 2024 WL 5146068, at *6.

---

[2] The Court may consider the CBA when deciding Southwest's motion to dismiss under Rule 12(b)(1). *See, e.g.*, *Germosen*, 2014 WL 4211347, at *1 n.3.

Hon. Sanket J. Bulsara
March 10, 2025
Page 4

E. **If the Court Does Not Dismiss Plaintiffs' NYLL § 191 Claim on Waiver or Preemption Grounds, It Should Stay the Proceeding.**

New York courts have reached different conclusions as to whether Section 191 includes a private right of action. *Compare Grant*, 223 A.D.3d 712 (holding that statute does not confer a private right of action), *with Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144 (1st Dep't 2019) (finding private right of action). The New York Court of Appeals has yet to weigh in on this issue. That may soon change. The plaintiff in *Grant* has filed a motion, which remains pending, for re-argument and leave to appeal to the New York Court of Appeals on the question of whether Section 191 includes a private right of action. *See Mayors v. Port Imperial Ferry Corp.*, No. 24-6815, 2025 WL 34830 at *3 (S.D.N.Y. Jan. 3, 2025). Because guidance from New York's highest court will likely resolve this issue, district courts in this Circuit have stayed Section 191 claims pending the outcome in *Grant*. *Id.* (collecting cases). So, if the Court declines to dismiss Plaintiffs' Section 191 claim on preemption or waiver grounds, it should stay this action at least until the Second Department rules on the motion pending in *Grant*.

If the Court elects to decide the issue, it should follow the Second Department's well-reasoned decision and hold that Plaintiffs have no private right of action to enforce Section 191. As *Grant* explained, the payment of full wages on a regular, bimonthly payday does not constitute the nonpayment or underpayment of wages under the statute's "plain language." 223 A.D.3d at 715-16. Moreover, there is no indication that Section 191 "was meant to address circumstances"—as Plaintiffs allege here—"in which an employer pays full wages pursuant to an agreed-upon, biweekly pay schedule[.]" *Id*. at 719.

We thank Your Honor for your attention to this matter.

Respectfully submitted,

Jason D. Burns

cc: All counsel of record via ECF