UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
RICHARD STRAIN and DAVID GARNER,
*individually and on behalf of all others similarly situated*,

                Plaintiffs,

      v.

SOUTHWEST AIRLINES CO.,

                Defendant.
-------------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
24-CV-08885-SJB-ST

**BULSARA, United States District Judge:**

Defendant Southwest Airlines Co. ("Southwest") has filed a motion for reconsideration of this Court's decision denying its motion to dismiss, which was issued during a premotion conference on April 23, 2025. (Mot. for Recons. dated May 7, 2025, Dkt. No. 21; *see* Min. Entry for Premot. Conference dated Apr. 23, 2025). The motion is denied.

Reconsideration is "an extraordinary request that is granted only in rare circumstances, such as where the court failed to consider evidence or binding authority." *Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 54 (2d Cir. 2019). As such, "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Though Southwest contends its application fits appropriately within these exacting standards, it is nothing more than

an attempt to reargue, shift positions, and make new arguments after having its initial motion denied.

In its letter seeking a premotion conference, Southwest—in its tertiary argument following two legally invalid arguments about preemption—contended that the Federal Labor Standards Act ("FLSA") "requires only 'prompt' payment and does not impose a specific deadline for paying wages." (Letter Mot. for Premot. Conference dated Mar. 10, 2025 ("Def.'s PMC Letter"), Dkt. No. 11 at 3 (citing *Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998))). Southwest argued, therefore, that a violation of New York Labor Law ("NYLL") § 191, which requires weekly pay, cannot be the basis for a FLSA claim. (*Id.* at 1 ("Plaintiffs' . . . FLSA claim fails for the straightforward reason that the FLSA does not mandate weekly pay.")). The Court rejected this argument, noting that a violation of NYLL § 191 could be one factor suggesting—and indeed an objective indication—that Southwest did not promptly pay its employees, and therefore constitute a violation of FLSA. (*See* Tr. of Premot. Conference dated Apr. 23, 2025 ("Apr. 23 Tr."), Dkt. No. 22-1 at 19:07–20:17).

Southwest did not contend in its letter that Plaintiffs' Complaint failed the "test" for prompt payment claims under *Rogers*. (Def.'s PMC Letter at 3; Compl. dated Dec. 29, 2024 ("Compl."), Dkt. No. 1). Nor did it do so at oral argument.[1] In fact, Southwest

---

[1] The Court: Explain to me your prompt payment argument. Is it that there is no claim under FLSA for prompt payment that's based on a 191 violation?

[Southwest's Counsel]: I think there are a couple of levels. One, I think that our argument here is when you are looking at what is objectively reasonable, particularly in a case where you have a CBA, it's hard to say

2

conceded that NYLL § 191 can be used to determine objectively reasonable promptness of payment under FLSA:

> The Court: [A]lthough it may not be dispositive as to it being prompt payment or not, why can't what state law provide[s] be one fact that is looked at in determining, and an objective fact at that, what is prompt or not prompt?
>
> [Southwest's Counsel]: I would agree with that, your Honor. I'm not going to argue that New York labor law isn't one factor that the court wouldn't look at when determining what is objectively reasonable.
>
> [Southwest's Counsel]: You are just saying a 191 violation does not by itself create a prompt payment violation under FLSA.
>
> Mr. Burns: That's exactly right, your Honor.

(Apr. 23 Tr. at 7:21–8:08). Now, under the guise of reconsideration, it contends that this Court "erred by not determining whether Plaintiffs satisfied their burden under the binding test established in *Rogers*[.]" (Mem. of Law in Supp. of its Mot. for Recons. dated May 7, 2025 ("Def.'s Mem. of Law"), Dkt. No. 21-1 at 1). That, of course, is an entirely new set of arguments. Having first used *Rogers* as a passing citation for an argument that state law cannot determine federal law payment frequency, Southwest now spends pages discussing how *Rogers* sets forth a multi-part "test" which Plaintiffs' Complaint allegedly fails to meet. (*Id.* at 3–6). If *Rogers* set forth a pleading "test" that the Complaint failed to satisfy, Southwest should have said so in its letter or at oral argument. But it did not. (*See* Def.'s PMC Letter; Apr. 23 Tr.). These new arguments

---

> that it's not reasonable to pay on a two-week basis. But, yes. I think our argument is that the New York labor law does not dictate what prompt payment means under the FLSA.

(Apr. 23 Tr. at 6:17–7:02).

3

are a sufficient basis to deny the motion for reconsideration.  E.g., *Cooke v. Frank Brunckhorst Co.*, LLC, 734 F. Supp. 3d 206, 213 (E.D.N.Y. 2024) (denying reconsideration in FLSA case, *inter alia*, because defendant raised new arguments "without excuse as to why these arguments were not raised previously . . . [which] are therefore not cognizable on a motion for reconsideration"); *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 292 (E.D.N.Y. 2013) (denying reconsideration in FLSA case, *inter alia*, because parties "may not use a motion for reconsideration to raise new arguments for the first time when they were free to raise them during the original briefing" (quotations omitted)).

In any event, the new arguments have no merit.

The "pleading requirements" that Southwest takes from *Rogers* for a prompt payment claim are anything but.  In *Rogers*, the Second Circuit explained that "the prompt payment requirement is not violated when an employer *changes* the pay schedule, provided that the change: (a) is made for a legitimate business reason; (b) does not result in unreasonable delay in payment; (c) is intended to be permanent; and (d) does not . . . [violate other provisions]."  148 F.3d at 58 (emphasis added).  But those elements are only relevant when there are "changes" in pay schedule.  *Id.* at 60 ("We hold that the FLSA does not prohibit an employer from *changing* the payday of its employees for a valid business purpose[.]" (emphasis added)).  The only "test" that *Rogers* established for prompt payment claims generally is that a violation is measured against "objective" standards.  *Id.* at 57–58.

To interpret *Rogers* as requiring that a plaintiff plead certain elements, like business justification, in *all* prompt payment cases unmoors that portion of *Rogers* from its context, and does violence to the concept of objective standards, which can vary from case to case. Indeed, that is precisely why—even for cases involving changes in frequency—*Rogers* said that these elements were relevant "[i]n general." *Id.* at 58.[2] *Rogers* did not set establish a set of exhaustive factors that must be pled in every prompt payment case. Tellingly, Southwest does not cite a single case that interprets *Rogers* in this novel, unyielding manner.[3] (*See* Def.'s Mem. of Law).

Southwest's position ultimately confuses two issues: whether (1) a violation of NYLL § 191 constitutes a *per se* violation of FLSA; and (2) a violation of NYLL § 191 can be considered as one factor in determining whether there has been a FLSA violation. If the Plaintiffs were arguing the former, Southwest would have no defense to FLSA if it was found in violation of NYLL § 191. But Plaintiffs are not taking that position. (*See* Apr. 23 Tr. at 9:21–10:01 ("But we are not actually saying . . . if there is a 191 violation,

---

[2] This is plain from the very cases Southwest relies on. (*See* Def.'s Mem. of Law at 4 (citing *McDonald v. H&M Fashion USA Inc.*, No. 24-CV-2476, 2025 WL 744014, at *2 (S.D.N.Y. Mar. 6, 2025))); *McDonald*, 2025 WL 744014, at *2 ("Cognizable prompt payment claims *typically arise* when changes to, or practices regarding, an employee's pay schedule stem from no legitimate business purpose, result in an unreasonable payment delay, or have the effect of evading the FLSA's minimum wage or overtime requirements." (emphasis added)).

[3] Even assuming that the *Rogers*'s "pleading requirements" applied here, the Complaint does allege that the late payment was unjustified and unreasonable. (*E.g.*, Compl. ¶ 36 ("Defendant does not have a good faith basis for failing to pay Plaintiffs' and class members' wages on a weekly basis."); *id.* ¶ 37 ("Defendant's consistent failure to pay Plaintiffs and the class members weekly is unjustified and objectively unreasonable.")).

5

there is necessarily a violation of the prompt payment. But we are saying that 191 provides a clearly objective reasonable standard[.]")). This means that Southwest can invoke business reasons and other facts in response to justify why its wage payments were nonetheless prompt under FLSA. Indeed, that is the import and relevance of *Rogers*—the ability to consider all objective factors in a comprehensive inquiry into whether a worker was paid on time. Yet Southwest continues to attack the former position as legally inconsistent with *Rogers* (which it would be, by resulting in the Court ignoring all other standards other than the one in NYLL). Attacking this strawman is the core logical fallacy in Southwest's motion for reconsideration.

As noted by the Court during the premotion conference, courts have held that a failure to comply with NYLL weekly pay requirements could be evidence of a violation of FLSA's prompt payment requirement. (Apr. 23 Tr. at 20:01–06 (citing *Cooke*, 734 F. Supp. 3d at 215)). Southwest, however, proceeds to argue anew that FLSA does not incorporate NYLL's pay frequency requirements—resurrecting the very argument the Court previously rejected. (Def.'s Mem. of Law at 7 ("[T]he FLSA does not automatically incorporate state law requirements. And, relevant here, the FLSA does not incorporate state law pay frequency requirements." (citations omitted))). The new gloss on the recycled arguments fares no better than the original.

Southwest first takes aim at *Cooke*, claiming that it fails to apply *Rogers*. (*Id.* at 6). The judge in *Cooke* did no such thing—the opinion Southwest (and this Court) relied on was a decision on a motion for reconsideration. 734 F. Supp. 3d at 208. *Rogers* was addressed and cited in the original decision underlying the motion for reconsideration.

6

*See Cooke v. Frank Brunckhorst Co., LLC*, 722 F. Supp. 3d 127, 136–37 (E.D.N.Y. 2024), *on reconsideration*, 734 F. Supp. 3d at 208. Having done so, there was no reason to do so again on reconsideration, particularly when *Rogers* neither sets forth a "test" nor dispositive requirements for every FLSA prompt payment claim. A failure to comply with a test of Southwest's own creation does not make the decision incorrect.

Southwest then engages in an extended discussion as to why *Cooke* must be wrong, because using state law to determine whether FLSA was violated would result in non-uniform pay frequency across the United States, with workers in Texas being paid at different times from those in New York. (Def.'s Mem. of Law at 7–9). Of course, that is exactly the regime that FLSA authorized, by permitting state law to supplement baseline federal requirements (with minimum wage laws the best example). Indeed, that is consistent with—not contrary to—FLSA, which is what *Cooke* recognized. *Cooke*, 734 F. Supp. 3d at 215 ("Therefore, where the FLSA declined to set an exact frequency of pay requirement, the FLSA has allowed states—like New York—to augment protections where necessary, the latter [of] which tracks the spirit of the FLSA."). And *Cooke* is not alone in that assessment. *See Mota v. Abalon Exterminating Co., Inc.*, No. 22-CV-7602, 2024 WL 4202687, at *9 (S.D.N.Y. Sept. 16, 2024) ("[S]imilar considerations were contemplated by New York's legislature in devising NYLL Section 191 . . . . Accordingly, courts in this Circuit have found defendants to have violated the FLSA by failing to issue prompt payment pursuant to NYLL Section 191.") (collecting cases).

As for the suggestion that *Cooke* is an outlier, it is incorrect.[4] *E.g.*, *Mota*, 2024 WL at *9 (collecting cases); *Cooke*, 734 F. Supp. 3d at 215 (collecting cases). That Southwest can identify district court cases that decline to follow Cooke—*e.g.*, *McDonald*, 2025 WL 744014; *Pineda v. Big City Realty Mgmt., LLC*, No. 22-CV-5428, 2024 WL 5146068, at *6 (E.D.N.Y. Dec. 17, 2024)—does not mean that the Court committed error, let alone clear error. (Def.'s Mem. of Law at 3). *See, e.g.*, *J.B. Sterling Co. v. Verhelle*, 470 F. Supp. 3d 298, 302–03 (W.D.N.Y. 2020) (denying reconsideration and holding that there was no clear error of law where the cited authority did not apply "in [the] context," where there was otherwise an absence of binding authority, and where "disagreement with the Court's analysis of [a] legal issue is not grounds for reconsideration"); *In re C-TC 9th Ave. P'ship v. Norton Co.*, 182 B.R. 1, 3 (N.D.N.Y. 1995) ("[A]ny litigant considering bringing a motion for reconsideration must evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant."). And, the cases Southwest relies on arguably only address the "*per se*" violation of FLSA distinguished above. *McDonald*, 2025 WL 744014 at *3 ("Beyond their bare assertion that violating NYLL § 191 *necessarily* gives rise to an FLSA claim, Plaintiffs fail to allege any facts that would allow the Court to analyze their FLSA claim

---

[4] Southwest also suggests that the failure to pay late was combined with another violation, *i.e.*, underpayment of wages owed, in the cases cited in *Cooke* to show a violation of FLSA. (Def.'s Mem. of Law at 9). To be sure, this is a feature of some other cases, but there is no requirement—other than standing, *i.e.*, establishing injury from the late payment—that a FLSA prompt payment claim be accompanied by another FLSA or NYLL violation to be actionable.

8

'by reference to objective standards.'" (emphasis added) (quoting *Rogers*, 148 F.3d at 58)).

Finally, Southwest contends that the Court erred because it "overlooked objective data" like that contained on a federal website. (Def.'s Mem. of Law at 9–10). Besides it being impossible to overlook something never before presented—in either the premotion letter or oral argument—the argument is also impertinent. The Court has the discretion to consider such material on a motion to dismiss, but not for the truth of the statements contained therein. *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) ("Even though the Court takes judicial notice of [internet materials], their purposes at the motion-to-dismiss stage are limited. They may be used only for 'determining what the documents state,' and [defendant] cannot rely on them to 'prove the truth of their contents.'" (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007))). But the Court certainly would not consider such information on a motion for reconsideration of a denial of a motion to dismiss, because it represents a new argument.[5]

Southwest's motion for reconsideration is denied.

---

[5] Southwest alternatively asks for further opportunity to fully brief the issues on its original motion to dismiss. (Def.'s Mem. of Law at 2). As the Court noted in its original oral ruling, a motion to dismiss may be deemed as having been made after a premotion submission and oral argument. (Apr. 23 Tr. at 15:03–15:21). And here, where the arguments have no merit, and when Southwest has now briefed a motion to reconsider that raises the same—and new—arguments, there is no reason to delay this case further. The request is denied.

SO ORDERED.

*/s/ Sanket J. Bulsara*

SANKET J. BULSARA

United States District Judge

Date: May 13, 2025
      Central Islip, New York