UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RICHARD STRAIN and DAVID GARNER,

                           Plaintiffs,        **MEMORANDUM AND ORDER**

  -against-                                   24-CV-8885 (SJB) (ST)

SOUTHWEST AIRLINES CO.,

                           Defendant.
------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

On December 30, 2024, Named Plaintiffs Richard Strain and David Garner ("Named Plaintiffs") filed a collective action on behalf of themselves and those similarly situated against Southwest Airlines Co. ("Defendant"), alleging a violation by Defendant of the Fair Labor Standards Act. *See generally* Compl., ECF No. 1. Now before this Court is Named Plaintiffs' Motion for Conditional Collective Action Certification and Authorization of Notice (the "Motion"), filed on June 5, 2025. For the reasons discussed below, the Motion for Conditional Certification is GRANTED.[1]

## BACKGROUND

Named Plaintiffs Richard Strain and David Garner are ramp agents employed by Defendant Southwest Airlines Co. at Long Island MacArthur Airport and Buffalo Niagara International Airport respectively. *See* Compl. at ¶ 10, ¶ 13. Defendant Southwest is an airline

---

[1] Federal law permits "a magistrate judge to hear and determine any pretrial matter pending before the court," 28 U.S.C. § 636(b)(1)(A), including a motion for conditional certification of a collective action, which is only a "preliminary determination" and not dispositive. *See Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 265-67 (E.D.N.Y. 2005); *see, e.g., Lin v. JD Produce Maspeth LLC*, No. 20-CV-2746 (WFK) (TAM), 2021 WL 5163218, at *1 (E.D.N.Y. Nov. 5, 2021) ("It is well settled that a magistrate judge has authority to decide a motion for certification of a collective action."); *Bliss v. Patterson*, No. 19-CV-353 (LDH) (AYS), 2022 WL 523547, at *3 (E.D.N.Y. Feb. 22, 2022) (same); *Jian Guo Yang v. Zhou's Yummy Rest., Inc*., No. 19-CV-5203 (CBA) (SJB), 2020 WL 2738403, at *1 (E.D.N.Y. Apr. 28, 2020) (same); *Jun Hua Yang v. Rainbow Nails Salon IV Inc.,* No. 18-CV-4970 (DLI) (SJB), 2019 WL 2166686, at *1 (E.D.N.Y. May 16, 2019) (same); *Summa v. Hofstra Univ*., 715 F. Supp. 2d 378, 383–84 (E.D.N.Y. 2010) (Hurley, J.) (collecting cases).

- 1 -

that operates at airports throughout New York including LaGuardia Airport, Albany Airport, and the two aforementioned airports. *Id.* at ¶ 21. Named Plaintiffs brought suit against Defendant Southwest, alleging that Defendant violated the Fair Labor Standards Act ("FLSA") by paying Named Plaintiffs on a bimonthly basis rather than a weekly basis as required by the NYLL § 191 for all workers qualifying as manual laborers. *Id.* at ¶ 22. Named Plaintiffs, along with Opt-In Plaintiffs Richard Vicari and Nicolaus Himes ("Opt-in Plaintiffs"), (all four collectively referred to as "Plaintiffs") allege that they worked as ramp agents for Southwest over the prior three years, have spent over 25% of their time performing manual labor, and were not paid on the requisite weekly basis prescribed under NYLL § 191 for manual laborers. Pls.' Motion at 3-4; Pls.' Decls. at 1-8.

On March 10, 2025, Defendant Southwest filed a letter motion for a premotion conference on their anticipated motion to dismiss Plaintiffs' Complaint, which along with Plaintiffs' opposition, were converted into briefings on the motion to dismiss and subsequently denied by Judge Bulsara on April 23, 2025. *See* ECF No. 12; *see also* April 23, 2025, Minute Entry; *see also* Hr'g Tr. At 15:19-21. On May 7, 2025, Defendant filed a motion for reconsideration of the Court's April 23, 2025, Order, to which the District Court denied on May 13, 2025. ECF No. 21; ECF No. 23. On June 5, 2025, Named Plaintiffs filed the pending Motion for Conditional Collective Action Certification and Authorization of Notice ("Motion"), to which Defendant filed an Opposition ("Opposition") to on July 21, 2025, and Named Plaintiffs filed a Reply ("Reply") in support of on August 4, 2025.

## LEGAL STANDARD

The FLSA authorizes an aggrieved employee to maintain a collective action on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b). Such an action is not subject

to the class action requirements of Rule 23 of the Federal Rules of Civil Procedure. *Davis v. Lenox Hill Hosp.,* No. 03 Civ. 3746(DLC), 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004). Accordingly, there need not be a showing of numerosity, commonality, typicality, or adequacy of representation. *Id.* To bring a collective action, a plaintiff first must show that the defendant's pay practices violated the FLSA. 29 U.S.C. § 216(b). Plaintiffs who wish to participate in that collective action must then "opt-in" by consenting in writing to join the suit and filing their consents with the court in which the original action was brought. *Id.* In keeping with the FLSA's "broad remedial purpose," district courts may facilitate notice to other potential similarly-situated employees to inform them of the opportunity to opt-in. *Hoffmann–La Roche, Inc. v. Sperling,* 493 U.S. 165, 169–70, 110 S. Ct. 482, 107 L.Ed.2d 480 (1989).

Courts in this Circuit employ a two-step process to decide whether to certify a collective action under Section 216(b). *See Myers v. Hertz Corp.,* 624 F.3d 537, 554–55 (2d Cir.2010); *Lynch v. United Servs. Auto. Ass'n,* 491 F.Supp.2d 357, 367–68 (S.D.N.Y.2007). At the first step, the court makes an initial determination as to whether other potential plaintiffs are situated similarly to the named plaintiff with respect to the alleged FLSA violations. *Myers,* 624 F.3d at 555. At the second step, following discovery, the court reconsiders its preliminary determination as to whether the opt-ins are similarly situated. *Id.*

Although the FLSA itself does not define the term "similarly situated," courts require that there be a "factual nexus between the claims of the named plaintiff and those who have chosen [or might potentially choose] to opt-in to the action." *Davis v. Lenox Hill Hosp.,* 2004 WL 1926086, at *7 (internal quotation marks omitted). The relevant issue is not whether the named plaintiff and potential opt-in plaintiffs are identical in all respects, but, rather, whether they all allegedly were subject to a common employment policy that violated the FLSA. *Raniere v. Citigroup, Inc.,* 827

F.Supp.2d 294, 323 (S.D.N.Y.2011); *Hoffmann v. Sbarro, Inc.,* 982 F.Supp. 249, 261 (S.D.N.Y.1997) (Sotomayor, D.J.).

Because the preliminary conditional certification takes place early in the litigation and often before discovery has begun, a named plaintiff need make only a "modest factual showing" that he and other potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Sbarro,* 982 F.Supp. at 261. Plaintiffs may satisfy this burden by relying on "their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hallissey v. Am. Online, Inc.,* No. 99 Civ. 3785(KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008). Indeed, the burden is so low that even one or two affidavits establishing the common plan may suffice. *See, e.g., Hernandez v. Bare Burger Dio Inc.,* No. 12 Civ. 7794(RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (named plaintiff's affidavit); *Cohen v. Gerson Lehrman Grp., Inc.,* 686 F.Supp.2d 317, 331 (S.D.N.Y.2010) (two affidavits). Unsupported assertions in the pleadings, however, cannot satisfy a plaintiff's burden. *Myers,* 624 F.3d at 555.

When there are ambiguities in the papers seeking collective action status, the court must "draw all inferences in favor of the [p]laintiff" at the preliminary certification stage. *Mendoza v. Ashiya Sushi 5, Inc.,* No. 12 Civ. 8629(KPF), 2013 WL 5211839, at *4 (S.D.N.Y. Sept. 16, 2013) (quoting *Jenkins v. TJX Cos. Inc.,* 853 F.Supp.2d 317, 322 (E.D.N.Y.2012)). Thus, at this stage, the court may not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch,* 491 F.Supp.2d at 368; *see also Hoffmann–La Roche,* 493 U.S. at 174, 110 S.Ct. 482 ("[T]rial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."). Nor should the court "weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly

situated." *Lynch,* 491 F.Supp.2d at 368. The court's limited role at this stage is simply to determine whether the plaintiff has sufficiently alleged that he and other employees were victims of a common compensation policy that violated the FLSA. *Id.* Accordingly, if the plaintiff's allegations are sufficient on their face to support conditional certification, a defendant may not defeat the plaintiff's motion by presenting conflicting factual assertions. *See Colon v. Major Perry Street Corp.,* No. 12 Civ. 3788(JPO), 2013 WL 3328223, at *5 (S.D.N.Y. July 2, 2013) ("Defendants ... may not defeat a court's determination that [p]laintiffs are similarly situated by submitting their own affidavits."); *Winfield v. Citibank, N.A.,* 843 F.Supp.2d 397, 407 n. 6 (S.D.N.Y.2012) ("[C]ourts in this Circuit regularly conclude that [competing] declarations do not undermine the plaintiff's showing in the first stage of the conditional certification process."); *Jacob v. Duane Reade, Inc.,* No. 11 Civ. 0160(JPO), 2012 WL 260230, at *8 (S.D.N.Y. Jan. 27, 2012) ("The Court ... declines to weigh Plaintiffs' and Defendants' competing testimony at this phase of the litigation." (citations omitted)); *Pippins v. KPMG LLP,* No. 11 Civ. 0377(CM)(JLC), 2012 WL 19379, at *12 (S.D.N.Y. Jan. 3, 2012) ("To balance the parties' competing affidavits at this stage would require the Court to determine the facts, determine credibility of the affiants, and resolve legal contentions, all of which the conditional certification and potential later decertification process is structured so as to avoid.").

Once notice has been sent to the potential opt-in plaintiffs and after discovery closes, the court may entertain a defendant's motion to de-certify the action. This second stage of the process involves a "more stringent factual determination," *Lynch,* 491 F.Supp.2d at 368, which requires the court, "on a fuller record, [to] determine whether a [collective action] may go forward [because] the plaintiffs who have opted in are in fact 'similarly situated' to the named

plaintiffs," *Myers*, 624 F.3d at 555. If the opt-in plaintiffs are revealed not to be similarly situated, the court may decertify the class and dismiss the opt-in plaintiffs' claims without prejudice. *Id.*

## DISCUSSION

### I. Plaintiffs Satisfy the First Step

This Court, for the purposes of the first step of the conditional collective action, finds that Plaintiffs have met their minimal burden of demonstrating that they and other ramp agents, cargo agents, baggage handlers, and cargo handlers employed by Southwest are similarly situated. At the first step, the Court makes an initial determination as to whether other potential plaintiffs are situated similarly to the named plaintiff with respect to the alleged FLSA violations. *Myers*, 624 F.3d at 555. In assessing whether these other plaintiffs are "situated similarly," a "named plaintiff need make only a 'modest factual showing' that he and other potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 445 (S.D.N.Y. 2013) (quoting *Sbarro*, 982 F.Supp. at 261). Plaintiffs may satisfy this burden by relying on "their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." Hallissey, 2008 WL 465112, at *1. Indeed, the burden is so low that even one or two affidavits establishing the common plan may suffice. *See, e.g., Hernandez*, 2013 WL 3199292, at *3 (named plaintiff's affidavit); *Cohen*, 686 F.Supp.2d at 331 (two affidavits). Unsupported assertions in the pleadings, however, cannot satisfy a plaintiff's burden. *Myers*, 624 F.3d at 555.

In the instant case, Named Plaintiffs sufficiently demonstrate that (1) they were victims of Defendants' practices violative of the FLSA and (2) there are other potential plaintiffs who are situated similarly to the Named Plaintiffs with respect to the alleged FLSA violations. *See Jeong*, 985 F. Supp. at 447-48.

A. *Named Plaintiffs' Individual FLSA Claims*

In bringing a collective action, Named Plaintiffs must show that they, themselves, were victims of Defendant's alleged FLSA violations. *See Vengurlekar v. Silverline Techs., Ltd.*, 220 F.R.D. 222, 230 (S.D.N.Y.2003) (denying collective action certification where named plaintiffs were exempt from the FLSA's requirements).

Named Plaintiffs allege that they are manual workers and that under NYLL § 191(1)(a), Defendant is mandated to pay them on a weekly basis.[2] In their declarations, Named Plaintiffs claim Defendant Southwest failed to pay them within the requisite weekly time frame and instead paid Named Plaintiffs on a bimonthly basis- on or around the 20th of each month for work performed between the 1st and 15th, and on the 5th of the following month for work performed from the 16th to the end of the month. Pls.' Motion at 6; Strain Decl. ¶ 10; Garner Decl. ¶ 10. Defendant disputes the veracity of these declarations, claiming them to be too conclusory. However, the scope of Defendant's factual disputes, particularly those contesting manual worker qualifications, are almost exclusively confined to disputing whether the purported class is similarly situated, which will be discussed in the next section in greater detail. *See generally* Def.'s Opp.

Instead, Defendant claims that they are not in violation of the FLSA as the FLSA requires only that "wages be paid in a timely fashion" and cites heavily to the Second Circuit's opinion in *Rogers v. City of Troy, N.Y.* While it is true that *Rogers* held that an "employer can, without violating the FLSA, pay its employees later than the contractually agreed upon payday, if that late payment is due to the employer's good faith effort to make a permanent **change** in its pay

---

[2] "Every employer shall pay wages in accordance with the following provisions:
a. Manual worker.--- (i) A manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned; provided however that a manual worker employed by an employer authorized by the commissioner pursuant to subparagraph (ii) of this paragraph or by a non-profitmaking organization shall be paid in accordance with the agreed terms of employment, but not less frequently than semi-monthly." N.Y. Lab. Law § 191.

schedule," such a holding is only applicable when there are "changes" in the payment schedule. 148 F.3d 52, 54 (2d Cir. 1998). Furthermore, this argument was put forth by Defendant and rejected by the District Court twice before in this case; once at the premotion conference and again on the District Court's order denying Defendant's motion for reconsideration. *See* Min. Entry for Premot. Conf. dated Apr. 23, 2025; *see also* Order Den. Def. Southwest's Mot. for Recons., ECF No. 23. In its Order Denying Defendant's Motion for Reconsideration, the District Court rejected Defendant's recycled interpretation of *Rogers* and held that "the only 'test' that Rogers established for prompt payment claims generally is that a violation is measured against 'objective' standards. *Id.* at 57–58." Order Den. Def. Southwest's Mot. for Recons. at 4. The Court here, like the District Court, remains unconvinced by Defendant's regurgitated legal argument.

However, Defendant remains relentless in their claims that the District Court ruled twice in error in by insisting that the Court's holding in *Rogers* does not solely apply to "changes" in the payment schedule as it "would be nonsensical to find that that an employer can pay wages later than the regularly scheduled payday without violating the FLSA, but somehow violate the FLSA by consistently paying all wages owed on a regular pay schedule." Opp. at 8. Defendant offers the Court's ruling in *Farzana* to bolster their argument, in which that Court, applying *Rogers*, held that Defendant's policy of paying wages twelve days after the end of the pay period did not violate FLSA. *Farzana v. M and N Home Care Services, LLC*, 23-CV-6227, Dkt. No. 21, pg. 3-4 (E.D.N.Y. Sept. 18, 2024). This the first occasion in which Defendant cited a case that interprets *Rogers* outside the scope of "changes" in the payment schedule.[3] However, the District Court in its Order Denying Reconsideration, cited a far vaster array of case law citing to the contrary.[4]

---

[3] *See* Order Den. Def. Southwest's Mot. for Recons. at 5 *("*Tellingly, Southwest does not cite a single case that interprets Rogers in this novel, unyielding manner. *(See* Def.'s Mem. of Law).").
[4] *Id.* at 7. *Cooke*, 734 F. Supp. 3d at 215 ("Therefore, where the FLSA declined to set an exact frequency of pay requirement, the FLSA has allowed states—like New York—to augment protections where necessary, the latter [of]

Furthermore, the Court in *Farzana* did not address the relationship between FLSA and NYLL in regards to pay frequency as that Court chose not to exercise supplemental jurisdiction over the plaintiff's NYLL frequency of pay claim. *See Farzana*, 23-CV-6227 at pg. 5. Even if this Court were more convinced by the court's ruling in Farzana, such an argument constitutes a motion for reconsideration repackaged as an opposition, which are not permitted.[5] Therefore, Named Plaintiffs have plausibly demonstrated that they, themselves, were victims of Defendant's alleged FLSA violations.

B. *Other Similarly-Situated Potential Plaintiffs*

Now the only remaining question presented by Named Plaintiffs' Motion is whether there are other potential plaintiffs who are situated similarly to the Named Plaintiffs with respect to the alleged FLSA violations.

The relevant issue is not whether the named plaintiff and potential opt-in plaintiffs are identical in all respects, but, rather, whether they all allegedly were subject to a common employment policy that violated the FLSA. *Raniere*, 827 F.Supp.2d at 323; *Sbarro, Inc.*, 982 F.Supp. at 261. Because the preliminary conditional certification takes place early in the litigation and often before discovery has begun, a named plaintiff need make only a "modest factual showing" that he and other potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Id*. Plaintiffs may satisfy this burden by relying on "their own

---

which tracks the spirit of the FLSA."). And Cooke is not alone in that assessment. *See Mota v. Abalon Exterminating Co., Inc.*, No. 22-CV-7602, 2024 WL 4202687, at *9 (S.D.N.Y. Sept. 16, 2024) ("[S]imilar considerations were contemplated by New York's legislature in devising NYLL Section 191 . . . . Accordingly, courts in this Circuit have found defendants to have violated the FLSA by failing to issue prompt payment pursuant to NYLL Section 191.") (collecting cases).

[5] *See Pal v. Cipolla*, No. 3:18-CV-00616-MPS, 2024 WL 4343598, at *1 (D. Conn. Sept. 30, 2024) ("the rules do not permit successive motions for reconsideration."); *see also Hamilton v. HSBC Bank U.S.A. N.A., As Trustee*, 2020 WL 59935, at *1 (D. Conn. Jan. 6, 2020) ("[N]either the Bankruptcy Rules ... nor the local Rules of this Court ... permit the filing of multiple motions for reconsideration."); *Guang Ju Lin v. United States*, 2015 WL 747115, at *3 (S.D.N.Y. Feb. 18, 2015) ("A litigant is entitled to a single motion for reconsideration.").

pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hallissey*, 2008 WL 465112, at *1. Indeed, the burden is so low that even one or two affidavits establishing the common plan may suffice. *See, e.g., Hernandez*, 2013 WL 3199292, at *3 (named plaintiff's affidavit); *Cohen*, 686 F.Supp.2d at 331 (two affidavits). Unsupported assertions in the pleadings, however, cannot satisfy a plaintiff's burden. *Myers*, 624 F.3d at 555.

In the instant matter, Named Plaintiffs adequately demonstrate that there are other potential plaintiffs who are situated similarly to Named Plaintiffs with respect to the alleged FLSA violations. Named Plaintiff provided their own declarations along with declarations of two opt-in Plaintiffs, Nicholas Himes and Richard Vicari, all of which attest that their jobs as baggage and cargo handlers for Southwest involve physical labor, non-exhaustively comprising of "lifting, loading, and unloading baggage and cargo; provisioning planes; and assisting with snow removal," Strain Decl. ¶¶ 9, 13-14; Garner Decl. ¶¶ 9, 13-14; Himes Decl. ¶¶ 9, 13-14; Vicari Decl. ¶¶ 9, 13-14. Plaintiffs further allege that these "job duties are uniform across the airports out of which Southwest operates and consist almost exclusively of manual labor" and that none of these employees spend a significant portion of their work time on non-manual tasks;" assertions that sufficiently qualify Plaintiffs as manual workers under New York law.[6] *Id.* at ¶¶ 9,15. The Court finds that these four affidavits alone satisfy the markedly low burden that Named and Opt-in Plaintiffs were victims of a common policy or plan that violated the law. *Sbarro*, 982 F.Supp. at 261. *See e.g., Hernandez*, 2013 WL 3199292, at *3 ("Indeed, the burden is so low that even one or two affidavits establishing the common plan may suffice."); *see also, Cohen*, 686 F.Supp.2d at 331 (finding that two affidavits were sufficient to satisfy the "similarly situated" burden). Furthermore, this Court affords little deference to Defendant's declaration contesting Plaintiffs'

---

[6] NYLL§ 191(1)(a), *supra* note 2, at 7-8.

statuses as manual workers because a defendant may not defeat a plaintiff's motion for conditional certification by presenting conflicting factual assertions once a plaintiff proffers facially sufficient allegations supporting certification. *See Colon*, 2013 WL 3328223, at *5 ("Defendants ... may not defeat a court's determination that [p]laintiffs are similarly situated by submitting their own affidavits.").[7]

Defendant contends that the four declarations submitted by Named and Opt-in Plaintiffs are insufficient as they contain "the sorts of general statements and conclusory allegations that courts in this Circuit have found insufficient for conditional certification." Opp. at 12. Defendant cites *Adam v. Bloomberg L.P.* and *Khan v. Airport Mgmt. Servs., LLC* to support this assertion. No. 21-04775, 2024 WL 4457708; No. 10-07735, 2011 WL 5597371. However, these cases differ from the present one. The Court in *Adam* ruled that the plaintiff's declarations "state little more than that they observed other 'Help Desk Reps' in the office" and that the "remainder of their declarations resort to unsupported assertions as to those employees' hours and pay." 2024 WL 4457708, at *4 (internal citations omitted). The Plaintiffs here differ from the plaintiffs in *Adams* in that (1) they did not just rely on bare observations of other Southwest workers but provided detailed accounts of the duties of other ramp agents, cargo agents, and baggage and cargo handlers, along with the duties that these other workers undertake, and (2) both Named and Opt-in Plaintiffs provided substantiated assertions that they along with other similarly-situated workers were all paid bi-monthly as opposed to weekly, and Named Plaintiffs even provided proof of paystubs detailing the pay period and payment dates.[8] Strain Decl. ¶¶ 8-9, 10; Garner Decl. ¶¶ 8-9, 20;

---

[7] The Court should not "weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Lynch*, 491 F.Supp.2d at 368. The court's limited role at this stage is simply to determine whether the plaintiff has sufficiently alleged that he and other employees were victims of a common compensation policy that violated the FLSA. *Id.*

[8] Additionally, Defendant, by their own admission, claim that they pay all Plaintiffs "on a semi-monthly basis." Opp. at 1.

Himes Decl. ¶¶ 8-9, 10; Vicari Decl. ¶¶ 9, 13-14. Likewise, Plaintiffs here differ from the plaintiff in *Khan* in that (1) the plaintiff in *Khan* was unable to produce a single other individual interested in participating as a plaintiff in the case after the plaintiff was given five months of preliminary discovery to do so (a discovery period to which this Court never granted to the parties prior to filing of the present motion), and (2) several of the declarations submitted in support of the plaintiff's motion "expressly reject[d] the notion that they do not perform managerial functions," a workplace function in which the plaintiff's argument for "similarly-situated workers" relies upon. 2011 WL 5597371, at *4-5. Therefore, the Court's rulings in both hold little bearing in discrediting Named Plaintiffs showing that other potential plaintiffs are situated similarly to the Named Plaintiffs with respect to the alleged FLSA violations. Furthermore, while the Court agrees with Defendant that the four declarations submitted are "cookie-cutter" and contain "identical allegations," this similarity in the declarations can contrarily bolster Plaintiff's argument that the Plaintiffs are similarly situated since they all allegedly perform the same "cookie-cutter" tasks. *Id.*

The Court lends some credibility to Defendant's contention that Plaintiffs failed to provide any specific information regarding employees that work at LaGuardia Airport and Albany International Airport. *See* Opp. at 12. While this could present an issue, Named Plaintiffs have alleged, and Defendant failed to dispute, that Corporate Defendant operates and controls all its sites in the same manner, including those at which no Plaintiff worked. Mot. at 11-12. The Second Circuit has long recognized this principle and upheld conditional certification where plaintiffs alleged common practices even at locations where plaintiffs never worked, and in turn, frequently authorizes notice across those sites.[9]

---

[9] *See e.g., Zimnicki v. Krysiak Constr. Corp.*, No. 21-CV-04634-RPK-JRC, 2022 WL 17820139, at *7 (E.D.N.Y. Sept. 27, 2022) ("However, this Court notes that "plaintiffs allege—and defendants do not dispute—that the [Corporate Defendant] centrally operates and controls all of its construction sites, including those where no named plaintiff worked. In such circumstances, courts frequently authorize notice across all of the defendant's work

Therefore, Named Plaintiffs and other potential plaintiffs employed by Southwest as ramp agents, cargo agents, and other baggage and cargo handlers across the four aforementioned airports are similarity situated with respect to the alleged FLSA violations.

## II. Authorization of Notice

Since this Court determined that named plaintiffs and potential plaintiffs are similarly situated, the Court is well within its discretion to authorize notice to all those potential plaintiffs. *See, e.g., Cooke v. Frank Brunckhorst Co.*, LLC, 722 F. Supp. 3d 127, 141 (E.D.N.Y.), on reconsideration in part, 734 F. Supp. 3d 206 (E.D.N.Y. 2024) ("Although § 216(b) does not expressly provide for court-authorized notice to potential opt-in plaintiffs in a collective action, it is well settled that district courts have the power to authorize an FLSA plaintiff to send such notice.") (internal citations omitted).

Plaintiff requests that notice be issued to all baggage and cargo handlers who worked for Southwest in the State of New York for at least one day between December 30 through the present day.[10] Mot. at 16. Plaintiffs ask that the proposed notice provides "potential opt-ins with accurate and timely information concerning the pendency of the collective action, their option to participate,

---

sites.")(internal citations omitted); *see also Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 72 (E.D.N.Y. 2016) ("In finding that plaintiffs both (1) met their minimal burden at the conditional certification stage and (2) sufficiently alleged facts supporting the scope of the proposed collective, the court opined that "plaintiffs allege—and defendants do not dispute—that the Company centrally operates and controls *all* of its construction sites, including those where no named plaintiff worked. In such circumstances, courts frequently authorize notice across all of the defendant's work sites.")(internal citations omitted); *see also Capsolas v. Pasta Rest., Inc.*, No. 10 Civ. 5595, 2011 WL 1770827, at *3 (S.D.N.Y. May 9, 2011) (authorizing notice to all of defendants' restaurants, including those where no named plaintiff worked, when they "share[d] common ownership" and were "administered by the same company"); *see also Karic v. Major Auto. Cos.*, 799 F.Supp.2d 219, 227 (E.D.N.Y.2011) (granting certification across all of defendants' car dealerships when plaintiffs alleged "common ownership and control of all of the[ ] entities, including the three dealerships for which no plaintiff has yet appeared"); *see also Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F.Supp.2d 89, 93–94 (E.D.N.Y.2010) (finding that plaintiffs, all of whom worked at the same restaurant, were similarly situated to employees at two other restaurants when all three locations were owned by the same individuals); *see also Guzelgurgenli v. Prime Time Specials, Inc.*, 883 F.Supp.2d 340, 351–52, (E.D.N.Y.2012); *Siewmungal v. Nelson Mgmt. Grp. Ltd.*, No. 11 Civ. 5018, 2012 WL 715973, at *3 (E.D.N.Y. Mar. 3, 2012).
[10] In this case, present day would be the date of this order, January 13, 2026.

and the consequences of electing to op-in and to refrain from doing so." *Id.* In terms of logistics, Plaintiffs moves the Court to order Southwest to produce the names, phone numbers, mailing addresses, and email addresses of all potential plaintiffs currently or formerly employed by Defendant Southwest and to approve dissemination of notice through mail, email, and posting on Plaintiffs' counsel's website. *Id.* at 16-17. Lastly, Plaintiffs request that potential collective action members be provided with a sixty-day opt-in window with a reminder notice to be sent prior to the close of the sixty-day period. *Id.* at 17. Plaintiffs provided a copy of their proposed notice, attached as Exhibit 1 to their Motion.

Defendant, on the other hand, moves the Court to order the parties to meet and confer to construct a mutually acceptable notice as Defendant contests many, if not most, of Plaintiffs' provisions in the proposed notice; namely in regards to the language used in the notice and the laws referenced within it, the broad categorization of who qualifies as a potential plaintiff, the mode of notice transmission, the reminder notice, whom the notice should be returned to, and the three-year notice period. Opp. at 15-16.

The Court agrees with Defendants that the parties should attempt to prepare a joint mutually agreed upon notice within thirty days of this Order. *See Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07CV2579 (HB), 2008 WL 938584, at *4 (S.D.N.Y. Apr. 7, 2008) (agreeing with Defendants' request that notice should be jointly and promptly prepared). If the parties are unable to reach agreement on specific provisions in the notice, they should submit proposed language to the Court for decision.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Conditional Collective Acton Certification is GRANTED and the parties are ordered to jointly prepare a mutually agreed upon notice within thirty days of this Order.

**SO ORDERED.**

_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated:Central Islip, New York
January 13, 2026